See *Hough* v. *Texas & Pac. R. Co.* 11 Fed. Rep. 621, note.

---

### SELVAGE *v.* JOHN HANCOCK MUT. LIFE INS. CO.

*(Circuit Court, E. D. New York.* June 17, 1882.)

LIFE INSURANCE—TENDER OF PREMIUM—FORFEITURE FOR NON-PAYMENT.

> In an action on a policy of life insurance to recover the amount of the policy on the death of the insured, the company cannot set up in defence a forfeiture of the policy by failure to pay or tender the premium on a particular day named in the policy, where the policy-holder was misled as to the day of payment and tender by information derived from the duly-authorized agents of the company, whereby tender was not made till after such date.

*Estes & Barnard,* for plaintiff.

*Blatchford Seward* and *Griswold & Decosta,* for defendant.

WHEELER, D. J. This is an action upon a policy of life insurance, and has now, after verdict for the plaintiff and before judgment thereon, been heard upon a motion of the defendant for a new trial. The policy provided for the payment of a premium at the office of the company, "or to their agents producing the receipt of said company," on or before the thirteenth day of July in every year during the continuance of the policy; that if any premiums should not be paid on or before the day when due, the policy should thereupon become forfeited and void, except as provided by the non-forfeiture law of Massachusetts; and that no person except the president or secre-

tary was authorized to make, alter, or discharge contracts or waive forfeitures. The premiums were paid to and received by agents producing receipts—for 1871 on July 17th; for 1872 on July 13th; for 1873 on August 1st; for 1874 on September 25th. The assured died March 13, 1879. The premium for 1875 was not paid on or before July 13th, and has never been received. If the plaintiff is entitled to have that premium treated as paid or tendered in due time, the non-forfeiture laws of Massachusetts would continue the policy so as to cover the death, otherwise not. The plaintiff's evidence tended to show that some time before July 13th, in that year, the assured and the plaintiff, being about to leave home, arranged with Edson C. Chick, a friend, to see to this payment for them; that afterwards, but still some time before the day, Chick called upon the agents who had charge of the defendant's business for that state, and who had produced the prior receipts and received the payments, and who had the receipt for that premium, and inquired when the premium would be due, being ignorant of the precise day and having no means at hand to ascertain it; that the agent said that their safe was locked and another agent was gone out with the key, so that the information could not then be given; that he then took Chick's address, and told him, further, that he would inform him seasonably of the day; that he never did inform Chick or the assured or the plaintiff of the day; that on the eighteenth day of August the assured took the requisite amount of money and started for the office of the agents, saying he would go there and tender the amount of the premium and returned saying he had done so; that controversy soon arose about non-acceptance of the premium, which was renewed after the death, in which the agents and officers of the defendant were fully informed that a tender on that day was claimed to have been made, and did not deny or dispute it. The defendant's evidence tended to show that notice was directed to be sent to the assured 30 days before the day; that no arrangement was made with Chick about informing him of the day; and that no tender of that premium was made. The defendant requested that a verdict be directed in its favor. The jury was instructed that if the assured and the plaintiff arranged with and relied upon Chick to see to the payment of that premium, and Chick applied at the office of the agents before the day for information as to the day, and the agent agreed to furnish it and did not, and Chick waited until after the day, relying upon that agreement, so that in fact Chick and the assured and the plaintiff were deceived into letting the day pass without payment by the agreement of the agent to inform Chick and

the failure to do so, and the premium was in fact tendered within a reasonable time of waiting for the information, the plaintiff was entitled to a verdict; but that if they were not so deceived into letting the day pass without payment, or if the tender of the premium was not in fact made, or if it was not made within a reasonable time for waiting for the information, the verdict should be for the defendant. The motion is urged principally on the ground that there was not sufficient evidence that a tender was actually made to be submitted to the jury upon that point, and because a verdict for the defendant was not directed.

What the assured said that he was going to do or had done about making the tender would not probably be sufficient to support the finding. What he said in starting with the money might be admissible as part of the *res gestæ;* what he said in returning was a mere narrative of a past transaction, hearsay, and of no weight. There is no question, however, as to the admissibility of this evidence under consideration; the question is whether all that was put in was sufficient. The conduct of a party with reference to a claim made about which the party is called upon to act is always admissible in evidence and important; and when a claim was made founded upon a fact, entirely, the existence of which was within the knowledge or reach of the knowledge of the party and not controverted, but proceeded about as if it existed, all this was not only competent but quite strong evidence in the nature of an implied admission that the fact existed.

It is doubtless true, as has been well argued for the defendant, that in case of such policies payment of the premiums must with great strictness be made at the day, and that misfortune or accident, or indulgence at some times after the day, will not excuse from payment, or entitle delinquents to indulgence at other times. *N. Y. Life Ins. Co.* v. *Statham,* 93 U. S. 24; *Kline* v. *N. Y. Life Ins. Co.* 3 Morr. Trans. 110; *Thompson* v. *Life Ins. Co.* Id. 332.

It is also true that these agents were somewhat special agents, with limited authority in respect to making new contracts and waiving forfeitures in respect to the policy, and that notice of the limitation was carried to policy-holders by the policy itself. Still, the requirement of payment was not so absolutely strict but that the conduct of the defendant could change or modify it. *Ins. Co.* v. *Eggleston,* 96 U. S. 572. Neither was the limitation upon the authority of the agents imposed by any statute or law, or otherwise, so that full authority might not be given by those entitled to confer authority, nor so but that it might be proved by course of dealing, or otherwise,

as such authority is usually proved. These agents were well authorized to receive payment according to the terms of the policy itself, and to transact the whole of that business in behalf of the defendant. Had they taken counterfeit money and called it good, probably no one would say that the policy was forfeited, although that would be non-payment, if good money was offered when the character of the bad was discovered and made known. Nor if they said that only part was due, and only what they said was due was offered, would any one probably say that the policy was forfeited because the whole was not offered? They were authorized to give all necessary information for the transaction of the business, and the defendant would be bound to the correctness of such as they should give. As has been said on behalf of the defendant, the assured could look at the policy for information as to the day, and Chick could have inquired of him; but Chick had not the information at hand, and although he had other sources to go to for it, and although they might not be bound to give it, still he had the right to ask for it of them, and if they gave it they were bound to give it correctly, and if they undertook to give it they ought to do so. They were not asked to waive a forfeiture, for there was none; nor were they asked to make, alter, or discharge any contract; they were merely asked for information and undertook to give it, but did not, and misled those interested in keeping up the insurance. This was done in a matter entrusted to them, and the defendant, which entrusted them, ought to bear the consequences. Had the assured called the thirteenth of July and inquired, and they had told him that the next day was the day, and relying upon that they had waited until the next day, and then been told it was too late, probably no one would say that the defendant was not estopped from claiming it was too late. That would be the same as this, except this was misleading for a longer time; but, as the jury have found, not longer than was reasonable to be relied upon.

The motion is denied, and the stay of proceedings is vacated.